UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ANA R.,

                                    Plaintiff,

                    -against-

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___ 1/6/2026 __

24-CV-08802 (ER)(SN)

**REPORT AND
RECOMMENDATION**

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE EDGARDO RAMOS:

Ana R. (the "Plaintiff") seeks judicial review of the determination of the Commissioner of Social Security (the "Commissioner") that she is not entitled to monthly disability insurance benefits ("DIB") or eligible for Supplemental Security Income ("SSI") payments under the Social Security Act (the "Act") from her October 30, 2021 alleged onset date through March 13, 2024, the date of the administrative law judge's decision. See ECF No. 7. I recommend that the Plaintiff's motion be DENIED.

## BACKGROUND

I.      **Administrative Proceedings**

Plaintiff applied for DIB on April 3, 2022, and SSI on April 4, 2022, alleging disability beginning on October 30, 2021. See ECF No. 6, Administrative Record ("R."), at 17. She claims that she has been unable to work since late 2021 due to a heart attack and two strokes. R. 45. Plaintiff's applications for DIB and SSI were denied on October 11, 2022, and again upon reconsideration on February 16, 2023. R. 17. She requested a hearing before an Administrative

Law Judge ("ALJ") to review her case and appeared remotely for a hearing before ALJ John Carlton on February 14, 2024. Id. The ALJ denied Plaintiff's claims on March 13, 2024. R. 28. On October 16, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. R. 1.

## II.     Plaintiff's Federal Case

Plaintiff timely filed her complaint on November 19, 2024, seeking review of the ALJ's decision. ECF No. 1. She requests that the Court vacate the ALJ's decision and remand to the Commissioner for further proceedings, including a new hearing. See ECF No. 8 at 14. Plaintiff argues that the record lacks substantial evidence to support the ALJ's finding that Plaintiff has a residual functional capacity ("RFC") for sedentary work. Id. at 9–10. Specifically, Plaintiff contends that the ALJ improperly relied on the allegedly "unclear and confusing" opinion of the Commissioner's consulting examiner, Dr. Susan Dantoni, and that the ALJ erred in not reaching out to Dr. Dantoni for clarification. Id. at 10–11. Plaintiff further argues that the ALJ improperly relied on the assessments of the state agency consultants, Drs. Uppal and Kirsch, because they never examined Plaintiff and allegedly lack the relevant medical expertise. Id. at 12–13.

## III.    Factual Background

Plaintiff was born on April 26, 1981, and was 40 years old at the time of the alleged onset of her disability in 2021. R. 201. Plaintiff suffered from a heart attack on October 31, 2021, which resulted in the placement of five stents. R. 1106. Following this event, Plaintiff returned to the Emergency Room multiple times, often reporting cardiac-related symptoms such as shortness of breath and chest pain. R. 489, 1105, 1279, 1309, 1369, 1384. Plaintiff testified that she also suffered from two strokes after her 2021 heart attack that left her with weakness on her left side.

R. 45. Plaintiff's medical records also indicate that she was a previous smoker but stopped in 2021. R. 475.

Plaintiff testified that she lives with her son and daughter and that, given her condition, her family assists with daily tasks such as cooking and cleaning. R. 49. Plaintiff reportedly is able to "shower[], bathe[], and dress[] herself on a regular basis" and does not use a cane or assistive device to walk. R. 48, 997. Plaintiff testified that she is unable walk long distances without stopping to catch her breath and cannot comfortably lift anything over five to seven pounds. R. 47. Moreover, following her heart attack, Plaintiff has been unable to drive, and her father assists by driving her to her medical appointments. R. 50–51. Before the onset of her alleged disability, Plaintiff worked as a material analisist for Con Edison for approximately eight years. R. 42. She also testified that she worked as an Uber driver and administrative clerk for some time. R. 41, 43–44.

## IV.    The ALJ's Decision

On March 13, 2024, the ALJ denied Plaintiff's DIB and SSI applications. R. 28. The ALJ identified the administrative and procedural history, the applicable law, and his findings of fact and conclusions of law. R. 17–28. At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025. R. 19. The ALJ also determined that Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of the disability on October 30, 2021. Id.

At step two, the ALJ found that Plaintiff has "the following severe impairments: coronary artery disease ('CAD'), transient ischemic attacks ('TIA'), asthma, vertiginous disorder and

obesity." [1] Id. At step three, he determined that Plaintiff's impairments or any combination thereof do not meet or medically equal the severity of a listed impairment in the applicable regulations (the "Listings"). R. 20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). Specifically, the ALJ found that the requirements of Listings 3.03 for asthma, 4.02 for chronic heart failure, and 4.04 for ischemic heart disease were not met or medically equaled. R. 21.

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that Plaintiff "cannot climb ladders, ropes or scaffolds occ[asionally climb] ramps stairs, and she can only occasionally balance, stoop, crouch, crawl, and kneel." Id. The ALJ also determined that Plaintiff "must work indoors in a temperature-controlled environment with no exposure to excessive heat, humidity, cold, fumes, odors, dust, pollen or other pulmonary irritants," and that she "cannot work at unprotected heights or around dangerous machinery." Id.

In reaching this RFC determination, the ALJ relied in part on the consultative internal medicine examination conducted by Dr. Susan Dantoni. R. 25. The ALJ found that Dr. Dantoni's examination established "physical functional limitations consistent with a restricted sedentary exertion." Id. In particular, Dr. Dantoni determined that Plaintiff has "some mild to moderate limitations for prolonged walking and standing, lifting and carrying, especially on the left side due to weakness on the left side." R. 999. Accordingly, Dr. Dantoni noted in her report that Plaintiff "should avoid any activity that requires any type of exertion as this causes her to become short of breath and have chest pain, such as climbing stairs." Id. Dr. Dantoni also

---

[1] Plaintiff only contests the ALJ's determination regarding certain physical limitations and did not allege that her diagnosed anxiety is a severe or mild limitation. See R. 38–39. Therefore, the Court does not discuss the medical evidence related to Plaintiff's allegations of mental impairment or physical limitations not related to Plaintiff's capacity for sedentary work.

concluded that Plaintiff "has no limitations for sitting, reaching, handling objects, hearing, seeing, or speaking." Id.

Since Dr. Dantoni did not define the terms "mild," moderate," or "prolonged," the ALJ found her opinion to be only "somewhat persuasive" and recognized that "[w]ithout more precision in the use of these terms, [he could not] fully evaluate consistency with the overall record." R. at 26. Therefore, in reaching his RFC determination, the ALJ also relied on the opinions of two state medical doctors, Drs. Uppal and Kirsch, who reviewed the administrative record and determined that Plaintiff "retained the capacity to perform sedentary work with restrictions to occasional postural activity." Id. Although the state doctors did not personally examine Plaintiff, the ALJ found that their opinions aligned with Dr. Dantoni's assessment. Id. Accordingly, the ALJ considered the opinions of the state doctors to be "generally persuasive." Id.

At step four, the ALJ concluded that Plaintiff is "capable of performing past relevant work as a procurement clerk and work order clerk," and that that these positions do not require Plaintiff to perform work-related activities precluded by her RFC. R. 27 (citing 20 C.F.R. §§ 404.1565, 416.965). The ALJ also determined, at step five, whether there were a significant number of jobs in the national economy that Plaintiff could perform considering her age, education, work experience, and RFC. R. 28. In reaching this conclusion, the ALJ primarily relied on the opinion of an impartial vocational expert, who testified that an individual with Plaintiff's characteristics would be able to perform the requirements of representative occupations such as a ticket checker (DOT #219.587-010, unskilled job, SVP 2, rated at the sedentary level of exertion, with an estimated 37,000 available jobs in the national job market); an addresser (DOT #209.587-010, unskilled, SVP 2, sedentary level of exertion, with an

5

estimated 17,000 available jobs); and a charge account clerk (DOT #205.367-014, unskilled, SVP 2, sedentary level of exertion, with an estimated an 19,000 available jobs). R. 63. Accordingly, the ALJ determined that Plaintiff could make a successful adjustment to other work and has, therefore, not been under a disability at any time from October 30, 2021, through March 13, 2024. R. 28.

## DISCUSSION

### I.    Standard of Review

In reviewing the Commissioner's decision, the Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside if it is "based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings are "conclusive" unless they are not supported by substantial evidence on the record. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The standard of review is therefore "very deferential . . . even more so than the clearly erroneous standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant [is] disabled . . . or to answer in the first instance the inquiries posed by

the five-step analysis set out in the SSA regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted); see also Brault, 683 F.3d at 448 ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original) (citations and internal quotation marks omitted). Remand, however, is appropriate where the ALJ fails to provide an adequate reasoning to support his decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("[W]e do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.").

## II.     Definition of Disability

A person is considered "disabled" under the Act if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). A claimant will be found to be disabled only if their "impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. at § 423(d)(2)(A).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 404.1520. The steps are followed in order and if it is determined that the claimant is

or is not disabled at a step of the evaluation process, then the evaluation will not progress to the next step. Id. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof at steps one through four. See Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013). At step five, the burden shifts, "to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." Schillo v. Kijakazi, 31 F.4th 64, 70 (2d Cir. 2022) (citing 20 C.F.R. § 404.1560(c)(2)). The Commissioner, however, does not need to provide additional evidence of the claimant's RFC. Id.

## III.    Analysis

Plaintiff argues that the record is "devoid of substantial evidence" to support the ALJ's finding that she has an RFC for sedentary work. ECF No. 8 at 10. Specifically, Plaintiff argues that the ALJ erred in his consideration of Dr. Dantoni's medical assessment. Id. at 10–12. Plaintiff contends that, given Dr. Dantoni's "unclear and confusing" opinion, the ALJ had a duty to seek clarification from Dr. Dantoni but failed to do so. Id. at 10–11. Plaintiff further argues that instead of seeking clarification, the ALJ improperly relied on the assessments of the state

8

medical doctors (Drs. Uppal and Kirsch). Id. at 12. Plaintiff claims that the ALJ's reliance on the opinions of the state medical doctors was misplaced because Drs. Uppal and Kirsch did not personally examine Plaintiff, are not specialized in cardiology or neurology, and did not consider records from 2023 that show her ongoing symptoms. Id. at 12–13. Plaintiff's arguments are without merit, as there was substantial evidence to support the ALJ's RFC determination.

### A.      The ALJ's Duty to Develop the Record

When an ALJ assesses a claimant's alleged disability, they, "unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009)); see also Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (confirming that the ALJ has an affirmative duty to develop the record, which "arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination"). Under this affirmative duty to investigate, the ALJ must "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any source on a consultative basis." 42 U.S.C. § 423(d)(5)(B). "Where the ALJ fails to develop the record, remand is appropriate." Evans v. Comm'r of Soc. Sec., 110 F. Supp. 3d 518, 537 (S.D.N.Y. 2015). But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa, 168 F.3d at 79 n.5 (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). Thus, "an ALJ is only required to recontact a treating source if the records received were inadequate to

9

determine whether Plaintiff was disabled." <u>Monroe v. Berryhill</u>, No. 17-CV-3373 (ER)(HBP), 2018 WL 3912255, at *22 (July 24, 2018), <u>report and recommendation adopted</u>, 2018 WL 3910824 (S.D.N.Y. Aug. 15, 2018) (quoting <u>Quinn v. Colvin</u>, 199 F. Supp. 3d 692, 709 (W.D.N.Y. 2016)) (cleaned up).

Here, the record is substantial and the ALJ had sufficient information to make an RFC determination without any need to contact Dr. Dantoni for additional clarification. Plaintiff's medical records include over 1,000 pages of treatment notes from various medical providers. The ALJ carefully considered the record as whole and assessed Plaintiff's medical results and patient notes from multiple medical facilities from 2021 through 2024. <u>See</u> R. 22–25. The ALJ properly found that the hospital evaluations following Plaintiff's 2021 heart attack were generally unremarkable. R. 23 ("In each of these visits, the claimant receive[d] a cardiac work-up, largely negative, her symptoms improve[d] with each hospital course and [the claimant was] discharged in stable condition."). The ALJ also determined that these records were consistent with the results from Dr. Dantoni's physical examination, which showed Plaintiff's antalgic gait and left-sided weakness. R. 26. Dr. Dantoni's assessment also showed that Plaintiff was able to "rise from [the] chair without difficulty," that she needed "no help changing . . . or getting on and off [the] exam table," and that she has "*no limitations for sitting*, reaching, handling objects, hearing seeing, or speaking." R. 997, 999 (emphasis added).

Although Dr. Dantoni's results "support[ed] findings consistent with sedentary exertion," the ALJ still considered two additional medical opinions before making his RFC determination due to the undefined terms included in Dr. Dantoni's assessment. R. 26. While the state medical doctors (Drs. Uppal and Kirsch) did not personally examine Plaintiff, they prepared detailed reports after reviewing the record, which included Plaintiff's medical files from Columbia

Doctors, Yale New Haven Hospital, Montefiore Medical Center, Industrial Medicine Associates, and Lawrence Hospital. R. 69–72, 98–99. In particular, Dr. Uppal reviewed the diagnostic test results from Plaintiff's multiple hospital visits, which showed that the "[d]iastolic function [was] normal" and "[n]o ischemic changes or arrhythmias." R. 78. Dr. Uppal also reviewed Plaintiff's CT and MRI scans, which showed no abnormalities. Id. Dr. Kirsch reviewed the same evidence and made the same findings as Dr. Uppal regarding Plaintiff's medical records. Id. at 101. Further, both state doctors acknowledged Plaintiff's severe cardiac history and the exertional restrictions it imposed on her but still found that she retained the functional capacity to perform sedentary work with certain restrictions to occasional postural activity. See R. 78–79, 101–02. The ALJ accordingly found that these opinions aligned with Plaintiff's medical history and with Dr. Dantoni's assessment regarding Plaintiff's physical limitations. R. 26.

Given the overall consistency across Plaintiff's medical records with respect to her capacity to perform sedentary work, there were "no obvious gaps in the administrative record." Rosa, 168 F.3d at 79 n.5. The ALJ was therefore under no obligation to seek additional clarification from Dr. Dantoni before making his RFC determination. Id.; see also Bechard v. Colvin, No. 23-7774, 2024 WL 5274654, at *3 (2d Cir. Jan. 3, 2025) (finding that an ALJ was not required to contact a doctor for additional clarification because the ALJ "otherwise had 'a complete record . . . consisting of medical opinions, treatment notes, and test results' from the relevant time period") (quoting from Schillo, 31 F.4th at 76).

**B.    The ALJ's Reliance on Opinions from Non-Examining Medical Consultants**

Plaintiff also argues that the opinions of Drs. Uppal and Kirsch "carry little evidentiary weight" because the state doctors never personally examined Plaintiff. ECF No. 8 at 10. Courts in this District have been clear that medical sources are not required to examine a claimant in

person in order for their opinion to constitute substantial evidence. See Veronica L. v. Comm'r of Soc. Sec., No. 24-CV-1079 (KHP), 2025 WL 720865, at *7 (S.D.N.Y. Mar. 6, 2025) (collecting cases). Rather, opinions of non-examining doctors "may constitute substantial evidence if they are consistent with the record as a whole." Jonathan G. v. Comm'r of Soc. Sec., No. 23-CV-989 (JGLC)(GRJ), 2024 WL 1342805, at *3 (S.D.N.Y. Mar. 29, 2024) (quoting Leach ex rel. Murray v. Barnhart, No. 02-CV-3561 (RWS), 2004 WL 99935, at *26 (S.D.N.Y. Jan. 22, 2004)).

Here, the opinions of Drs. Uppal and Kirsch were consistent with Plaintiff's medical records and the ALJ acknowledged that they aligned with the findings from Dr. Dantoni's examination of Plaintiff. R. 26. Thus, because the opinions of Drs. Uppal and Kirsch were consistent with and supported by the record as a whole, the ALJ did not err in relying on the opinions of the non-examining state doctors and finding them to be "generally persuasive." Id.; see also Rushford v. Kijakazi, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (deferring to an ALJ who found the opinions of non-examining medical consultants to be "most persuasive"); Tibbles v. Comm'r of Soc. Sec., No. 22-1127, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions, and may give greater weight to the report of a consultative physician than to that of a treating physician.") (internal citations and quotation marks omitted).

### C.       The ALJ's Consideration of the Doctors' Specialization

In further criticism of the weight afforded to the opinions of Drs. Dantoni, Uppal, and Kirsch, Plaintiff claims that "a meaningful RFC determination would seemingly require the insight of a cardiologist and/or neurologist" and argues that the ALJ failed to acknowledge the doctors' "inadequate credentials." ECF No. 8 at 12–13. This argument is also without merit.

While specialization in a relevant field may make an opinion more persuasive, see 20 C.F.R. § 404.1520c(c)(4), there is nothing in the applicable regulations that requires that an ALJ reject a medical opinion simply because a doctor is not a specialist in a particular field. See Robin P. v. Comm'r of Soc. Sec., No. 20-CV-863 (TJM), 2022 WL 593612, at *8 (N.D.N.Y. Feb. 28, 2022) ("[The] rule does not disqualify the opinion of a non-specialist, but instead directs the ALJ to consider specialization in deciding how much weight to afford an opinion."); see also Malespin v. Kijakazi, No. 22-CV-4087 (JLC), 2023 WL 4717958, at *10 (S.D.N.Y. July 25, 2023) ("[A]n ALJ is entitled to rely on . . . non-examining [s]tate agency medical consultants because [they] are qualified experts in . . . social security disability.") (quoting Frederick C. v. Comm'r of Soc. Sec., No. 19-CV-1078 (CFH), 2021 WL 466813, at *11 (N.D.N.Y. Feb. 9, 2021)); Rodriguez v. Kijakazi, No. 21-CV-2358 (JCM), 2022 WL 3211684, at *17 (S.D.N.Y. Aug. 9, 2022) ("The new regulations do not require rejection of a medical opinion merely because the examiner was not a specialist."). An ALJ can appropriately rely on the opinions of medical consultants who are not specialized in a relevant field if those opinions are supported by other evidence on the record. See Malespin, 2023 WL 4717958, at *10.

Moreover, under the applicable rules, an ALJ is not necessarily required to explain how he considered a doctor's specialization. See Capezza v. O'Malley, No. 23-CV-01813 (SDA), 2024 WL 642961, at *9 (S.D.N.Y. Feb. 15, 2024) ("While the ALJ may, but [is] not required to, explain how [he] considered . . . the medical source's specialization . . . the ALJ will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings.") (quoting 20 C.F.R. § 404.1520c(b)(2)) (emphasis and internal quotation marks omitted). As discussed above, the medical assessments that the ALJ considered were all supported by, and consistent with, Plaintiff's medical records.

Therefore, although Drs. Dantoni, Uppal, and Kirsch are not specialized in cardiology or neurology, the ALJ did not err in failing to acknowledge their credentials in his decision.

**D.     The ALJs Consideration of Recent Records Showing Ongoing Symptoms**

Finally, Plaintiff's cursory argument that the ALJ erred in relying on the assessments of the state medical doctors because they did not review certain 2023 records showing ongoing symptoms is also unfounded. Courts have repeatedly rejected the notion that a medical examiner is required to review a claimant's entire medical record before an ALJ can rely on their opinion. See, e.g., Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (rejecting the argument that a medical opinion may be superseded by additional material in the record and finding that a medical opinion may still constitute substantial evidence despite not encompassing the entire treatment record); Veronica, 2025 WL 720865, at *6 ("[N]othing in the regulations requires that the medical sources have access to the entire scope of treatment records in order for their opinions to constitute substantial evidence."). Moreover, although Drs. Uppal and Kirsch did not have access to Plaintiff's more recent medical records, the ALJ reviewed Plaintiff's medical record as a whole (including Plaintiff's recent records from 2023 and 2024) in making his RFC determination. See R. 24–25 (discussing treatment notes from May 24, 2023, May 31, 2023, August 4, 2023, and January 3, 2024). Thus, the ALJ did not err with respect to his consideration of Plaintiff's more recent medical records and further development of the record on this basis is not required under the applicable regulations.

Accordingly, the record as a whole supports the ALJ's finding that Plaintiff has the RFC to perform certain sedentary work. Under the substantial evidence standard of review, a "reasonable factfinder" could have reached the same conclusion as the ALJ. Schillo, 31 F.4th at 69.

## CONCLUSION

I recommend that Plaintiff's motion for judgment on the pleadings be DENIED.

SARAH NETBURN
United States Magistrate Judge

DATED:         January 6, 2026
               New York, New York

*               *               *

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable Edgardo Ramos if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Ramos. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).

15